J. G. WHITLOW v. R. R. MOORE.

(No. 1512, Op. Book No. 2, p. 280.)

1 w589
§ 1052
2 w666

APPEAL from Parker County.   Opinion by QUINAN, J.

§ **1052.** *Verdict; manner of receiving.*   The jury returned their verdict to the judge at his residence, and not in open court.   This occurred in the night, and he excused one of the jurors from being present at court next morning.   On the next morning, five of the jurors being present in open court, the verdict was read by the clerk

and assented to by the jurors present, and the judge
told the parties that if either of them desired the absent
juror to be present, he would have him sent for, but nei-
ther party requested this to be done. The manner in
which the verdict was returned and received was ex-
cepted to by the appellant. *Held:* There can be but little
doubt that the objection to the verdict is fatal to its
validity. Rev. Stats., arts. 1322 and 1325, direct the
manner of receiving the verdict of the jury, and the
proceedings to be had thereon. It must be returned in
open court by the jury. It must be read to them in
open court, and inquiry made of them whether it is their
verdict, and either party has the right to "poll the jury."
A verdict delivered to the judge at his private residence
is not a compliance with these requirements of the law.
It is not a proceeding conducted in open court and in the
face of the public. How much of the requirements of
the statute may be considered as merely directory, and
such as may be waived, it is not necessary to consider,
for in this case the parties consented to nothing. So,
though the dispersal of the jury, after the delivery of
the verdict to the judge, might not be fatal to the validity
of their verdict, but could be cured if they afterwards
appeared in open court and returned their verdict there,
yet that was not done in this case. In truth, there was
no verdict rendered in open court by the jury. But five
men of those impaneled appeared, and these did not
constitute a jury. The offer of the county judge to the
parties that, if they requested it, he would send for the
absent juror, did not require of them acceptance or re-
jection. It was an offer he had a right to make, and no
power to enforce the acceptance of. He had excused the
juror from attendance. What process could he issue to
bring him back, and how punish him if he failed to obey
his request? To tolerate such a loose and irregular pro-
cedure in respect to trial by jury, while seriously inter-
fering with the conduct of business in the courts, would
jeopardize the rights of parties, and destroy the respect

and confidence which ought to attend the trial by jury and the administration of justice. [19 Ind. 126; 6 Minn. 239.]

§ 1053. *Verdict; affidavits of jurors to impeach.* The practice of permitting jurors to make affidavit of facts which transpired in the jury room, and to state how they made up their verdict, in order to show that their verdict was erroneous and ought to be set aside, is wholly irregular, and such practice cannot be too severely reprobated.

February 23, 1881.          Reversed and remanded.